IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JASMINE HART                                                                      PLAINTIFF

VS.                                                CIVIL ACTION NO. 4:20-CV-078-DMB-JMV

LOVE'S TRAVEL STOPS AND COUNTY STORES, INC.             DEFENDANT

COMPLAINT

Plaintiff avers:

JURISDICTION

1) Plaintiff brings this action seeking redress for discrimination in employment (sexual harassment) under Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000e, *et seq*. This Honorable Court has jurisdiction of this cause of action by virtue of the "federal question" statute, 28 U.S.C. §1331. The court also has jurisdiction of this cause of action by virtue of the "civil rights and elective franchise" statute, 28 U.S.C. §1343.

PARTY PLAINTIFF

2) The plaintiff, Jasmine Hart, is an adult, resident and citizen of the City of Indianola and in the County of Sunflower and in the Northern District of the State of Mississippi, the address of whom is 308 Johnson Avenue, Indianola, Mississippi, 38751.

PARTY DEFENDANT

3) The defendant, Love's Travel Stops and Country Stores, Inc., is a corporation, organized and existing under the laws of the State of Oklahoma. Said corporation is duly licensed and authorized to transact business in the State of Mississippi. In point of fact, said

defendant is transacting business in several cities and towns in Mississippi, at each of which it is engaged in the truck stop business.

4) The registered, designated agent for service of process upon the defendant, Love's Travel Stops and Country Stores, Inc., is CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi, 39232.

## VENUE

5) Venue in this case is proper in this court by virtue of 28 U.S.C. §1391(b)(2) in that, as provided for in said section, a substantial part of the events and omissions giving rise to this cause of action occurred within this district.

## CAUSE OF ACTION

6) On or about March 7, 2018, plaintiff became employed as a food service worker by the defendant at its location in Indianola, Mississippi. Particularly, plaintiff was working (and at all times material hereto was working) in the restaurant portion of said truck stop which was a Hardee's Restaurant operated by defendant under a franchise. Plaintiff was always an employee of defendant, was paid by defendant and was never employed by Hardee's Restaurants. Attached as Exhibit "1" hereto is a copy of plaintiff's W-2 form for the year 2019 showing that she was employed by defendant.

7) Plaintiff was subjected to discrimination, sexual harassment based on her sex, female, during the time of her employment with Defendant, Love's Travel Stops and Country Stores, Inc., in violation of said Title VII of the *Civil Rights Act of 1964*, above cited, in that she was, on a number of occasions, subjected to sexual harassment, both physically and mentally, and particularly at the hands of one Bradley Patton, a fellow employee. Said acts of sexual harassment, hereinafter particularized and described, created a hostile and/or offensive work

environment for Plaintiff. (See *Meritor Savings Bank, FSB v. Vincent*, 417 U.S. 57, 91 L.Ed. 2d 49,106 S.Ct. 2399 (1986)).

8) Said acts of sexual harassment and disparate treatment were characterized by the following incomplete list, to-wit:

> 8a) Plaintiff's boyfriend (and the father of her child) Quinntarus Minton, was employed by defendant Love's Travel Stops and Country Stores, Inc., as a mechanic in said defendant's truck and automobile servicing and repair shop as part of its store and operation at Indianola. The party responsible for inflicting sexual harassment on plaintiff, Bradley Patton, was also employed there. When plaintiff's boyfriend (and the father of her child) confronted said Bradley Patton about his, Bradley Patton's sexual harassment of plaintiff, an altercation ensued. In spite of knowing full well and in spite of having seen a video of one of the acts of sexual harassment, the defendant, Love's Travel Stops and County Stores, Inc., fired plaintiff's boyfriend and kept Bradley Patton on as an employee even though it well knew of the sexual harassment and even though plaintiff was still employed in the Hardee's Restaurant part of the operation in very close proximity to said Bradley Patton.
>
> 8b) Plaintiff went on maternity leave prior to having her first child, a boy, born on October 19, 2018. The child's name is Quincey Minton. Plaintiff returned to work from maternity leave about the middle or latter part of December 2018. Plaintiff worked in the Hardee's restaurant facility of the Love's Travel Stops and Country Stores, Inc., and the said Bradley Patton worked as a mechanic or automotive worker in that portion of the Love's Travel Stops and Country Stores, Inc.'s operation at Indianola that provided mild mechanic work and vehicle services. The area in which such vehicle services were provided, was approximately 50 feet from that portion of the Love's Travel Stops and Country Stores, Inc., occupied by defendant's Hardee's Restaurant.
>
> 8c) In approximately January of 2019, said Bradley Patton began to sexually harass plaintiff. Plaintiff worked on Sundays as did said Bradley Patton. Plaintiff was a part time employee but Bradley Patton was a full-time employee.
>
> 8d) On a number of occasions beginning with January of 2019, Bradley Patton, who had no reason whatsoever to be in the Hardee's Restaurant portion of the Love's Travel Stops and Country Stores, Inc., in Indianola, would come into said restaurant and begin a conversation with plaintiff and would come very close to plaintiff and on several occasions put his hands on and groped plaintiff's gluteal muscles that is her backend. When said Bradly Patton so groped plaintiff from behind that is the front of his body would be behind or to the rear or the back portion of the anterior portion of plaintiff's body. In so doing this groping, said Patton would linger in the restaurant portion.

3

8e)   On occasions when Patton cupped plaintiff's buttocks, plaintiff would move his hand away and tell him to stop.

8f)   On another occasion Patton showed plaintiff a picture of his penis which picture was on his phone and he said something to plaintiff to the effect "When you are ready, I am ready."

8g) There was one other earlier occasion when said Patton showed plaintiff a picture of his penis.

8h) During the times Patton was groping plaintiff's lower, anterior portion of plaintiff's body, that is her backend, plaintiff was a preparer of the food stuffs, that is would prepare the vegetables, make the biscuits, and things of that nature. This area, in which plaintiff so prepared the food, was not populated by other employees nor was there a camera.

8i) On one occasion plaintiff was not at the station where the food preparation took place but was at another area of the Hardee's Restaurant portion and Patton came up behind plaintiff, grabbed plaintiff's gluteal muscle and began to very slightly undulate (make the sex movements) with the lower anterior portion of his body on the lower posterior portion of plaintiff's body, that is her gluteal muscles.

8j)   On a number of occasions said Patton would attempt to engage plaintiff in conversation referring to her as "hot" by saying things like "good morning beautiful" and he would come behind the counter where he had no business being and would tell plaintiff what he wanted to do to her, that is how he wanted to have sex with her and that he could do it better (than her boyfriend) and things of that nature. On one occasion said Patton smacked plaintiff's backend.

8k) There was video of some of this egregious conduct and plaintiff called the video to the attention of the Love's Travel Stops and Country Stores, Inc.'s management and plaintiff has seen the video and knows that mid-level managers of Love's Travel Stops and Country Stores, Inc., have seen the video. In spite of this Love's Travel Stops and Country Stores, Inc., fired plaintiff's boyfriend and kept the said Bradley Patton on.

8l) On one occasion Patton was touching plaintiff's backend and there was another employee present and Patton said that he was sorry for touching plaintiff in front of the other employee and that next time he would make sure that no one was around when he, Patton, touched plaintiff.

8m) Plaintiff chided Patton that he had a wife and children at home and Patton stated "Well she ain't got to know".

4

8n) Repeatedly Patton would walk away and then come back to plaintiff's work area in the restaurant where he had no business being and would make sexual comments of the most vulgar type to the effect what of what he wanted to do to plaintiff's body, how he will do it and that he can do it better than plaintiff's fiancé.

8o) On a number of occasions Patton made gestures toward plaintiff with his tongue and he would start laughing.

8p) Plaintiff's fiancé's supervisor, working in the automotive or tire shop, strongly intimated to said fiancé (but without firmly stating it) that Patton was sexually harassing plaintiff. The next day there was an aborted altercation between plaintiff's boyfriend (finance) and the said Patton and one of the supervisors in the tire shop stepped in between the two men so Love's Travel Stops and Country Stores, Inc., had full knowledge. On the day of the incident between Patton and plaintiff's fiancé, plaintiff was called to the office of Love's Travel Stops and Country Stores, Inc. and said she needed to make a statement against Patton which she did and she informed the general manager of Love's Travel Stops and Country Stores, Inc., Joel (surname will be obtained in discovery) and Phil (surname will be obtained in discovery), manager of the Indianola, Mississippi, Love's Travel Stops and Country Stores, Inc., and Lucas Johnson, manager of the tire shop were made aware of these incidents. Also, Clay Kirksey was/is the manager over the Hardee's restaurant and he had knowledge.

8p) On one occasion plaintiff's mother, living in Belzoni, came to Indianola and to Love's Travel Stops and Country Stores, Inc., just to speak and visit with the plaintiff for a minute. Patton observed plaintiff's mother and became attracted to her, plaintiff's mother. Patton then approached plaintiff inquiring if the woman he had seen was plaintiff's mother. When he learned that she was, Patton, using the "F" word, said that he would have sex with both plaintiff and her mother. Patton even threatened the mother's husband (plaintiff's stepfather) stating that he had something that would hold plaintiff's stepfather off.

8q) On one occasion Patton inquired of plaintiff as to when she got a break, telling her that he would have sex with her while she was on break.

8r) On February 17, 2019, plaintiff reported the acts of sexual harassment on the part of Patton to the Indianola Police Department.

## RIGHT TO SUE LETTER

9) On February 26, 2020, the United States Equal Employment Opportunity Commission at its Nashville, Mississippi, office issued Plaintiff a "Right To Sue Letter". A copy of the same is exhibited as Exhibit "2" hereto.

10) The hostile work environment created by the said Bradley Patton's acts of sexual harassment on and toward Plaintiff was so pervasive throughout the plaintiff's work spaces that it amounted to constructive notice to and on the part of the defendant. Plaintiff advised the defendant of such acts of sexual harassment thereby giving defendant actual knowledge thereof.

## ENTITLEMENT TO COMPENSATORY AND PUNITIVE DAMAGES AS A MATTER OF LAW

11) Except for her claim as hereinafter set out for compensatory and punitive damages and her claim to trial by jury, Plaintiff neither has, nor makes, claim against any of the defendants under the *Civil Rights Act of 1866*, as modified and amended by the *Civil Rights Act of 1991, et seq.*, now codified at 42 U.S.C. 1981 because she does not claim a racial discrimination and none of the defendants is a governmental entity or agency and none of the defendants acted under color of State law.

12) This does not mean that Plaintiff is not entitled to make claim for compensatory and punitive damages, however; before the enactment of the *Civil Rights Act of 1991*, one could not get compensatory damages or punitive damages in an sexual employment discrimination case; however, with the enactment of the *Civil Rights Act of 1991*, this changed and when a Plaintiff does not have a claim under 42 U.S.C. 1981, she may claim compensatory damages and punitive damages for sexual harassment and is entitled to trial by jury. See 42 U.S.C 1981a (a)(1) and 1981a(b)(1)

## COMPENSATORY INJURY

13) The sexual harassment/disparate treatment described above created unnecessary and heavy stress and anxiety on Plaintiff on numerous occasions. It caused her to "always be on edge" to the extent that she finally could not relate to her new born child and family. It caused

6

her to be distressed. It caused her to remain awake at night crying when she should have been resting and sleeping (many sleepless nights). It made her irritable and short with her family members. It generally made her life, not only less pleasant and less happy, but also almost unbearable.

## PLAINTIFF'S 1981a CLAIM

14) Plaintiff avers that the acts of discrimination vested upon her by defendant were done with malice and or reckless indifference so as to entitle Plaintiff to punitive damages under 42 USC §1981a(b)(1). Plaintiff likewise avers that the acts of discrimination vested on her by Defendant were acts of unlawful, intentional discrimination within the meaning of 42 USC §1981a(a)(1) so as to entitle her to compensatory damages. Plaintiff further avers that the Defendant had sufficient employees within the meaning of 42 USC §1981a (3) so as to subject the Defendant to a total award for punitive and compensatory damages of $200,000.00.

## DEMAND FOR ATTORNEYS' FEES

15) Plaintiff claims attorneys' fees against defendant under the Civil Rights Attorney's Fees Awards Act of 1976, 42 USC §1988 and under §706(k) of the Civil Rights Act of 1964 (42 U.S.C. §2000e-5(k).

## DEMAND FOR JUDGMENT

Of Defendant, Plaintiff prays the following relief, to wit:

1) A monetary judgment against defendant, for $500,000.00 for compensatory damages;

2) An award of attorneys' fees under the two statutes cited in paragraph 15.

3) Such punitive damages as may be awarded by the jury

## REQUEST FOR TRIAL BY JURY

7

Plaintiff requests trial by jury of all issues so triable.

Respectfully submitted this the 6th day of May, 2020

                              Jasmine Hart, Plaintiff

                              By: _____
                              Robert G. Johnston
                              Attorney at Law
                              MS Bar No. 3174
                              Alexander, Johnston &
                              Alexander, P.A.
                              P.O. Box 1737
                              Cleveland, MS 38732-1737
                              662-843-3631
                              Fax 662-843-3638
                              e-mail: alexjohn@cableone.net

                              ARTHUR H. CALDERON
                              Attorney for Plaintiff
                              Mississippi Bar No. 103917
                              303 Cotton Row, Suite 223
                              P.O. Box 1818
                              Cleveland, MS 38732
                              E-mail: arthur@msdeltalaw.com
                              Phone: 662-545-4445